UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

-----------------------------------------------------

| | |
|---|---|
| WILLIAM EDWARD HAAB, | **CIVIL ACTION** |
| Plaintiff, | **CASE NO. _____** |
| v. | **JUDGE _____** |
| WILLIS-KNIGHTON MEDICAL CENTER, | |
| Defendants. | |

-----------------------------------------------------

## COMPLAINT

"I now lift my pen to sign this Americans with Disabilities Act and say: Let the shameful wall of exclusion finally come tumbling down. God bless you all."

- President George H. W. Bush, July 26, 1990

BIZER & DEREUS
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

<u>**PRELIMINARY STATEMENT**</u>

1.      Plaintiff WILLIAM EDWARD HAAB (herein after "Mr. Haab") is a deaf individual who communicates primarily in American Sign Language ("ASL"), which is his expressed, preferred, and most effective means of communication. On or about January 30, 2016, Mr. Haab was a patient receiving treatment from Willis-Knighton Bossier Health Center. Throughout his care with the above-named healthcare provider, Defendant failed to provide Mr. Haab with the necessary interpretation services or auxiliary aids, and thereby failed to ensure effective communication with him in a medical setting.

2.      So called "lip-reading," the ability to understand the speech of another by watching the speaker's lips, is an extremely speculative means of communication and is no substitute for direct doctor-patient communication through a qualified sign language interpreter. Only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even the most adept lip-readers, in an ideal one-to-one situation, have been found to understand only a limited amount of what is said. Despite this, Defendant forced Mr. Haab to communicate using this unreliable and ineffective method, instead of properly accommodating his disability. Further, upon his discharge Mr. Haab was given medication, but was not provided with an interpreter, either in-person or through Video Remote Interpreting ("VRI") equipment, to explain the dosage, duration, possible drug interactions, or possible side effects.

3.      During some of his treatment, Mr. Haab's disability was accommodated using VRI equipment. However, Defendant failed to utilize VRI equipment during critical portions of Mr. Haab's treatment and the VRI equipment utilized by Defendant functioned intermittently and was therefore unreliable.

4.      Plaintiff brings this lawsuit seeking injunctive and declaratory relief and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Title III of the Americans With Disability Act, 42 U.S. Code § 12181 ("ADA"); Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116; and the Louisiana Human Rights Act ("LHRA"), LA. REV. STAT. ANN. § 51:2231 et. seq.; Plaintiff also seeks compensatory damages (including nominal damages) pursuant to the RA, Section 1557, and the LHRA.[1]

## THE PARTIES

5.      Plaintiff MR. HAAB is an individual residing at 2328 Broadway Drive, Bossier City, Louisiana 71111. MR. HAAB is profoundly deaf and communicates primarily in American Sign Language. He is substantially limited in the major life activities of hearing, speaking, and reading and is a qualified person with a disability within the meaning of the ADA and the Rehabilitation Act.

6.      Upon information and belief, DEFENDANT is a non-profit corporation organized in the State of Louisiana and doing business in Caddo Parish, Louisiana

7.      Upon information and belief, DEFENDANT is domiciled at 2600 Greenwood Road, Shreveport, Louisiana 71103.

8.      Upon information and belief, DEFENDANT is the owner and operator the real properties and improvements which is the subject this action, to wit: Willis-Knighton Bossier Health Center, located at 2400 Hospital Dr, Bossier City, LA 71111. (hereinafter referred to as "the Property").

---

[1] Plaintiff recognizes that money-damages are not available under Title III of the ADA.

9.      Upon information and belief, the Property is a hospital and medical center.

10.     Defendant is operating a place of public accommodation under federal and state antidiscrimination laws and is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, thus making Defendant subject to the requirements of Section 1557 of the Patient Protection and Affordable Care Act, Section 504 of the Rehabilitation Act, and the Louisiana Human Rights Act.

## JURISDICTION & VENUE

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law.

12.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendant resides within the jurisdiction of this District, and/or a substantial part of the events that give rise to the claims occurred in this District, and/or the Defendant has sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced.

## STATEMENT OF FACTS

13.     The regulations for Title III of the ADA provide specific regulations for the functioning of Video Remote Interpreting Services. Pursuant to 28 C.F.R. § 36.303 "Auxiliary aids and services", which provide:

"(f) *Video remote interpreting (VRI) services*. A public accommodation that chooses to provide qualified interpreters via VRI service shall ensure that it provides –

(1) Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication;

(2) A sharply delineated image that is large enough to display the interpreter´s face, arms, hands, and fingers, and the participating individual´s face, arms, hands, and fingers, regardless of his or her body position;

(3) A clear, audible transmission of voices; and

> (4) Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI."

14.     Upon information and belief, some time shortly before January 30, 2016, Mr. Haab was injured while playing with his dog. Mr. Haab suffered an injury to his ankle.

15.     As a result of his injury, Mr. Haab sought medical care from the Willis-Knighton Bossier Health Center.

16.     Upon the start of his treatment, Defendant possessed VRI equipment. However, Defendant's staff and/or employees did not know how to operate the VRI equipment.

17.     After some time waiting for the VRI equipment to begin working, Mr. Haab's girlfriend began to film the use of the VRI equipment. In this video film Defendant's staff and/or employees struggle to operate the VRI equipment. During the film one of the staff members states "Sometimes you just got to reboot it, see what it does."

18.     Despite the lack of sign language interpreter or functional VRI equipment, a doctor at Willis-Knighton Bossier Health Center began peppering Mr. Haab with questions using lip reading and yelling.

19.     The doctor asked Mr. Haab numerous specific questions, such as his allergies and the names of his medications. Without the aid of an interpreter or working VRI equipment, Mr. Haab was not able to fully answer the doctor or explain himself.

20.     Mr. Haab was concerned that he did not have the ability to fully articulate himself due to his limited ability to read lips and his very limited ability to speak spoken English.

21.     As a result of the lack of an interpreter or working VRI equipment, Mr. Haab did not have the ability to explain the name or type of medication he was taking.

22.     After this line of questioning, Defendant's staff and/or employees finally began to operate the VRI equipment. The doctor then began to use the VRI equipment to communicate with Mr. Haab. However, the doctor did **not** go back to the questions he had previously asked Mr. Haab without the aid of an interpreter or VRI equipment.

23.     Throughout his use of the VRI equipment, the video feed was choppy and the screen kept freezing.

24.     Upon information and belief, the VRI equipment's poorly-functioning video feed and freezing behavior was the result of placement of Mr. Haab in a room with poor wifi and/or failure of Defendant's employees and staff to properly operate the VRI equipment.

25.     After the doctor was done asking Mr. Haab questions, Defendant's staff and/or employees packed up the VRI equipment.

26.     Upon information and belief, sometime after the VRI equipment was packed up, Mr. Haab was prescribed medication.

27.     Upon information and belief, Defendant's staff and employees did not utilize an interpreter or VRI equipment to explain the dosage instructions, duration, possible drug interactions, or possible side effects of Mr. Haab's medication.

28.     At the time of his discharge, Mr. Haab was not able to ask questions about his medication due to the lack of an interpreter or VRI equipment.

29.     The nature and need of an interpreter to explain the dosage instructions, duration, possible drug interactions, or possible side effects of Mr. Haab's medication was obvious to Defendant.

30.     Due to his disability, Mr. Haab has limited knowledge of written English. Therefore, Mr. Haab required an interpreter or VRI equipment to understand the dosage

instructions, duration, possible drug interactions, or possible side effects of the prescribed medication.

31.     Without the aid of an ASL interpreter or VRI equipment, Mr. Haab was unable to understand the nature, scope, and seriousness of the medication he was prescribed upon his discharge.

32.     Due to the failure of the doctor to go back and re-ask Mr. Haab the questions he previously asked without the aid of an interpreter or VRI equipment, Mr. Haab was not adequately able to communicate with his doctor about his current medications or to ask his doctor for clarification.

33.     Without the aid of a VRI equipment free of choppy breaks and freezing screens, was not adequately able to communicate with his doctor about his condition or to ask his doctor for clarification.

34.     In most instances, effective communication could not have taken place without the aid of a qualified ASL interpreter.

35.     As a result of the discrimination set forth above, Mr. Haab suffered injury in the form of anxiety, indignity, and invasion of his civil rights.

36.      Mr. Haab intends to and will visit the Willis-Knighton Medical Center again in the near future, both as a patient and as an ADA tester.

37.     Due to Defendant's advanced medical facilities, Mr. Haab is likely to return to Willis-Knighton Medical Center next time he experiences injury or sickness in Bossier.

38.     However, Mr. Haab fears that when he returns to Willis-Knighton he will encounter the same communication barriers to access which are the subject of this action.

39.     Independent of his intent to return as a patron to the Property, Mr. Haab

additionally intends to return as an ADA tester to determine whether the communication barriers to access stated herein have been remedied.

40.      Mr. Haab has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Mr. Haab is entitled to have his reasonable attorneys' fees, costs, and expenses paid by Defendant, pursuant to 42 U.S.C. § 12205.

## CLAIM 1: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

41.      Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

42.      Pursuant to 28 C.F.R § 36.303(a), Auxiliary aids and services, provides that "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, **denied services**, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services…" (emphasis added).

43.      The regulations for Title III of the ADA also provide specific regulations for the functioning of Video Remote Interpreting Services. Pursuant to 28 C.F.R. § 36.303(f) "Auxiliary aids and services", which provide:

"*Video remote interpreting (VRI) services*. A public accommodation that chooses to provide qualified interpreters via VRI service shall ensure that it provides –

>        (1) Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication;

>        (2) A sharply delineated image that is large enough to display the interpreter´s face, arms, hands, and fingers, and the participating individual´s face, arms, hands, and fingers, regardless of his or her body position;

>        (3) A clear, audible transmission of voices; and

>        (4) Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI."

44.      Through the actions set forth above, Defendant has failed to comply with 28 C.F.R § 36.303(a) and 28 C.F.R § 36.303(f). Defendant's failure to comply with these provisions

has resulted in invasion of Mr. Haab's civil rights.

45.    Absent an order from this Court, Mr. Haab has no reason to believe that he will not suffer injury again the next time he visits the Willis-Knighton Medical Center.

46.    Mr. Haab is suffering irreparable harm as a result of the lack his ability to know that he can visit Willis-Knighton Medical Center and obtain medical care without experiencing discrimination.

## CLAIM 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

47.    At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendants' conduct.

48.    At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to Defendants' conduct.

49.    At all times relevant to this action, Mr. Haab had substantial limitations to the major life activities of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

50.    At all times relevant to this action, Defendants have offered a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

51.    Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

52.    The Rehabilitation Act permits associational claims by extending relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

53.    Defendant discriminated against Plaintiff, solely on the basis of disability, by

denying Plaintiff meaningful access to the services, programs, and benefits Defendant offer to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of 29 U.S.C. § 794.

54.     Plaintiff is therefore entitled to seek and recover compensatory damages (including nominal damages) for the injuries and loss he sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

55.     Plaintiff is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## CLAIM 2: VIOLATIONS OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

56.     Plaintiff repeats and reiterates every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth at length herein.

57.     At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 USC § 18116 was in full force and effect and applied to the Defendant's conduct.

58.     At all times relevant to this action, Section 1557, 42 USC § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

59.     At all times relevant to this action, Mr. Haab had substantial limitations to the major life activity of hearing and speaking, and were individuals with disabilities within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and of Section 1557, 42 USC § 18116.

60.     At all times relevant to this action, Mr. Haab's primary language for communication was American Sign Language and not English; and Mr. Haab had limited ability

to read, write, speak, or understand English, and was an individual with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

61.     At all times relevant to this action, Defendant received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

62.     Pursuant to Section 1557, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 USC § 18116.

63.     Defendant has discriminated and continue to discriminate against Plaintiff solely on the basis of disability, by denying him meaningful access to the services, programs, and benefits that Defendant offers to other individuals and by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1157, 42 U.S.C. § 18116.

64.     Defendant discriminated against the individual Plaintiff by failing to ensure effective communication through the providing of qualified sign language interpreters on-site and/or through VRI equipments that worked.

65.     Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss he sustained as a result of Defendant's discriminatory conduct, pursuant to 42 U.S.C. § 18116(a).

66.     Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a), the Rehabilitation Act, 29 U.S.C. § 794(a).

## CLAIM 3: VIOLATIONS OF THE LOUISIANA COMMISSION ON HUMAN RIGHTS

67.     Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

68.     At all times relevant to this action, the Louisiana Human Rights Act, LA. REV. STAT. ANN. § 51:2231 et. seq., has been in full force and effect and has applied to Defendant's conduct.

69.     At all times relevant to this action, Mr. Haab has had substantial limitations to the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the Louisiana Human Rights Act, LA. REV. STAT. ANN. § 51:2232(3)(a).

70.     At all times relevant to this action, Defendant has been a place which is supported directly or indirectly by government funds and thus are places of public accommodation, resort, or amusement pursuant LA. REV. STAT. ANN. § 51:2232(9).

71.     The LHRA prohibits discriminatory practices and provides that "it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort, or amusement . . . on the grounds of . . . disability." LA. REV. STAT. ANN. § 51:2247.

72.     The LHRA extends relief to "any person deeming himself injured by" discrimination in violation thereof. LA. REV. STAT. ANN. § 2264.

73.     Defendant discriminated against Mr. Haab, on the basis of disability, in violation of LA. REV. STAT. ANN. § 51:2247.

74.     Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to LA. REV. STAT. ANN. § 51:2247.

75.     Plaintiff is further entitled an award of attorneys' fees, costs, and disbursements pursuant to the LCHR, LA. REV. STAT. ANN. § 51:2247.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief against Defendants:

A.      That this Court declare that Defendant and its policies, procedures, and/or practices are in violation of the ADA and/or the Rehabilitation Act;

B.      That this Court enter an Order directing Defendant to alter its communication policies, procedures, and/or practices to make them accessible to and useable by individuals with communication disabilities to the full extent required by Title III of the ADA, the Rehabilitation Act, the LHRA, and Section 1557;

C.      Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff and her mother to unlawful discrimination in violation of Section 1557 of the Patient Protection and Affordable Care Act, Section 504 of the Rehabilitation Act, and the Louisiana Human Rights Act;

D.      Award to Plaintiff:

    i.      Compensatory damages (including nominal damages) pursuant to Section 1557 of the Patient Protection and Affordable Care Act, Section 504 of the Rehabilitation Act, and the Louisiana Human Rights Act;

    ii.     Reasonable costs and attorneys' fees pursuant to the Section 1557 of the Patient Protection and Affordable Care Act, Section 504 of the Rehabilitation Act, and the Louisiana Commission on Human Rights;

iii.    Interest on all amounts at the highest rates and from the earliest dates allowed by law;

iv.    Any and all other relief that this Court finds necessary and appropriate.

Dated: December 15, 2016

Respectfully Submitted,

BIZER & DEREUS
Attorneys for Plaintiff
Andrew D. Bizer (LA # 30396)
andrew@bizerlaw.com
Garret S. DeReus (LA # 35105)
gdereus@bizerlaw.com
Marc P. Florman (LA # 35128)
mflorman@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

By: /s/ Garret S. DeReus
    Garret S. DeReus